## POOL et al. v. JOY.

### No. 12831.

Court of Civil Appeals of Texas. Fort Worth.

May 13, 1933.

Head, Dillard, Maxey-Freeman, McReynolds & Hay and J. F. Holt, all of Sherman, and John W. Culp and W. D. Garnett, both of Gainesville, for appellants.

W. O. Davis, of Gainesville, and J. W. Chancellor, of Bowie, for appellee.

DUNKLIN, Justice.

M. A. Joy, a resident of Kaufman county, was engaged in the business of manufacturing overalls and other garments in the city of Gainesville. His business was transacted first under the name of Service Garment Company, a corporation. All the stock in that corporation was later acquired by another corporation, namely, the Western Building & Investment Company, and Joy was the owner of all the stock in that company. The Pool Manufacturing Company was likewise engaged in the manufacture of garments in the city of Sherman, Grayson county, with R. F. Pool as its president and C. L. Pool, his son, as secretary and treasurer.

During a visit of M. A. Joy with C. L. Pool in the office of the Pool Manufacturing Company in the city of Sherman on or about May 1, 1925, certain negotiations occurred which gave rise to the present suit, instituted by M. A. Joy in the district court of Cooke county against the Pool Manufacturing Company and C. L. Pool individually, the residences of both of which were alleged to be in Grayson county; and this appeal is prosecuted by both defendants from an order overruling their pleas of privilege to be sued in Grayson county.

Plaintiff alleged that: "On or about the first day of May, 1925, the defendant Pool in his own behalf and as the agent and president of the Pool Manufacturing Company induced the plaintiff to enter into a contract with them concerning the property and business of the Service Garment Company. The defendants agreed with the plaintiff that if he would procure the organization of a corporation to be known as the Blanchard Manufacturing Company with paid up capital of $50,000.00 to take over the assets and good will of the Service Garment Company and place the stock so as to give the defendant Pool control of the business, he and the Pool Manufacturing Company would devote the skill, time and attention to the business necessary to make it a success and to find a market for its products in like manner as for the products of the Pool Manufacturing Company, the sale of the products of each being under the control of defendant Pool and the Sherman Corporation."

Then follow allegations that the plaintiff procured a charter for the Blanchard Manufacturing Company with a capital of $50,000 divided into 500 shares of $100 each. The incorporators were M. A. Joy, who subscribed for 374 shares; J. B. Blanchard, 125 shares; and G. C. Comegys, 1 share.

It was alleged that all of that stock was paid for by the plaintiff, who at the suggestion of C. L. Pool transferred 259 shares to the following named persons:

"Emil Sauer, 5 shares.
"Hugh Longmoor, 3 shares.
"J. G. Blanchard, 125 shares.
"Roger Case, 5 shares.
"Ed Young, 5 shares.
"Emmett Ratcliff, 3 shares.
"Bonner Stalcup, 2 shares.
"S. P. Cunningham, 20 shares.
"Mrs. C. L. Pool, wife of defendant, 85 shares.
"Emory Smith, 3 shares.
"Dan W. Smith, 3 shares."

But it was further alleged that the transfer of that stock was all on credit, to be paid for only out of the profits of the company; but none of those obligations was ever discharged.

Plaintiff further alleged that from and after the date of the issuance of the charter to Blanchard Manufacturing Company until its assets were sold in bankruptcy five years later, the business of that company was in fact dominated, controlled, and managed by the defendants through the stockholders to whom plaintiff transferred stock and who were in fact mere dummies of the defendants.

Plaintiff further alleged that he, "at the request of the Blanchard Manufacturing Company, guaranteed its notes to the First

National Bank of Gainesville, Texas, for $30,-000.00, and to the Lindsay National Bank of Gainesville, Texas, for $20,000.00, all of which he was forced to pay and did pay, which was a total loss to him except $9,000.00 of the First National Bank debt, and $3,-000.00 of the Lindsay National Bank."

Then follow allegations that under and by virtue of the alleged agreement C. L. Pool took charge and control of the conduct of the business of the Blanchard Manufacturing Company in the city of Gainesville, such control being through the managing officers and agents of that company who became such at his instance.

: According to further allegations, for something like a year both defendants did devote some time and attention to the affairs of that company and the marketing of its products, and during that time the business was successful; but later defendants ceased to pay any attention to the business, knowing that it was in the hands of inexperienced operatives, and heavy losses were sustained until February 6, 1930, when the company was adjudged a bankrupt in the federal court and its assets there sold for the sum of $18,-695.44.

There were further allegations that the failure of the company was due to conspiracy on the part of the defendants with J. G. Blanchard, the manager of the business, and others employed, to wreck it and to remove it as a competitor of the Pool Manufacturing Company.

The petition then concludes as follows:

. "By reason of the fraudulent and wrongful conduct of the defendants and their disregard of their contract the $49,900.00 paid by the plaintiff as the capital stock of the Gainesville Company has been a total loss to him and so has $21,000.00 paid by him to the First National Bank of Gainesville, on the indebtedness which he guaranteed, and $17,000.00 paid by him on the indebtedness of the company to the Lindsay National Bank, which sums aggregating $87,000.00 have been long due and though often thereto requested, the defendants have failed and refused and still refuse to pay the same or any part thereof.

"Wherefore, the plaintiff prays that the defendants be cited and upon final hearing that he have judgment for his losses, with interest thereon at the rate of six per cent per annum from the time of their occurrence and for such other relief as he may be entitled to in the premises."

The pleas of privilege of the two defendants were in statutory form, and plaintiff filed a controverting affidavit adopting the allegations in the petition as a reply to that plea.

■ In order to overcome defendants' pleas of privilege, the burden was on the plaintiff to introduce evidence sufficient to constitute, prima facie, proof of a cause of action arising within some of the exceptions to article 1995, Rev. Statutes. First Natl. Bank v. Bulls· (Tex. Civ. App.) 243 S. W. 577, and decisions there cited; World Co. v. Dow, 116 Tex. 146, 287 S. W. 241; Richardson v. Cage Co., 113 Tex. 152, 252 S. W. 747.

Evidence introduced upon the hearing of the pleas of privilege was sufficient, prima facie, to sustain plaintiff's allegations that C. L. Pool entered into the agreement which was the primary basis of plaintiff's suit; that he made the agreement in the city of Sherman and in the office of the Pool Manufacturing Company for himself and in behalf of the Pool Manufacturing Company; the organization of the Blanchard Manufacturing Company; the deposit by plaintiff of $50,-000 in bank to the credit of the Blanchard Manufacturing Company to pay for the entire capital stock; the issuance of stock therein as alleged upon agreement on the part of all the stockholders other than plaintiff and G. C. Comegys to pay plaintiff for their respective shares out of whatever profits that might be realized from the business; the withdrawal by plaintiff from the bank of $50,000 deposited by him to pay for stock subscriptions in consideration of the surrender and cancellation by him of the stock he then held in the Service Garment Company and the Western Building & Investment Company; credit given by the bank to the Blanchard Manufacturing Company upon plaintiff's guaranty which was thereafter paid by him, as alleged, and the losses sustained by plaintiff as alleged in the concluding part of his pleadings; the participation by C. L. Pool for about one year in the conduct of the business of the company in the city of Gainesville, during which time the business was operated with success, and his failure thereafter to take any part in such management; the inexperience of Blanchard, who was made the president and manager of that company, when he was first appointed to that position; the employment of Blanchard at the suggestion of C. L. Pool; the issuance of stock to other stockholders at the suggestion of C. L. Pool; the rendition of service to the Blanchard Manufacturing Company by its employees who were at the same time performing a like service for the Pool Manufacturing Company; and the bankruptcy of that company through losses sustained and the sale of its assets as alleged.

■ But there was no competent evidence to sustain plaintiff's allegation that C. L. Pool was lawfully authorized by the Pool Manufacturing Company to bind it by the agreement made by him upon which plaintiff's suit was predicated; to the contrary, the proof conclusively showed that R. F. Pool was the president of the company at that time; that C. L. Pool was secretary and treasurer; and that the board of directors

of the Pool Manufacturing Company had never adopted any resolution giving C. L. Pool such authority. In order to support a finding that C. L. Pool had such authority, it would be necessary to build inference upon inference, which is not permissible. Ft. Worth Belt Ry. v. Jones, 106 Tex. 345, 166 S. W. 1130; Graham Natl. Bank v. Beavers (Tex. Com. App.) 290 S. W. 529; Garrett v. Hunt (Tex. Com. App.) 283 S. W. 489; Penn. Ry. v. Chamberlain, 288 U. S. 333, 53 S. Ct. 391, 77 L. Ed. ——.

 It follows, therefore, that subdivision 23 of article 1995, Rev. Statutes, providing that a suit may be brought against a private corporation in any county in which the cause of action or any part thereof arose, has no application; and that the plea of privilege of that corporation could not be overcome except under the provisions of subdivision 29a of article 1995, enacted by the 1st Called Session of the 40th Legislature, c. 72, page 197 (Vernon's Ann. Civ. St. art. 1995, subd. 29a), providing that: "Whenever there are two or more defendants in any suit brought in any county in this State and such suit is lawfully maintainable therein under the provisions of Article 1995 as to any of such defendants, then such suit may be maintained in such county against any and all necessary parties thereto."

Since the alleged contract of C. L. Pool was not in writing and he was not a resident of Cooke county, in which the suit was instituted, subdivision 7 of article 1995, as amended by Acts 1927 (1st Called Sess.) c. 72, § 1 (Vernon's Ann. Civ. St. art. 1995, subd. 7), is the only exception under which the suit could be maintained against him in Cooke county. That exception reads: "In all cases of fraud, and in all cases of defalcation by public officers, suit may be brought in the county where the fraud was committed or where the defalcation occurred, or any of such suits may be brought where the defendant has his domicile."

 His breach of the contract would not of itself show fraud. The only allegation upon which the same could be made the basis of fraud was that Pool entered into it with no intention to perform it. In order to say that the evidence introduced was sufficient, prima facie, to sustain that allegation, it would be necessary to build one inference upon another, which is not permissible. At best, the full purport of it would be to warrant a surmise or suspicion that such was true, which would be no more than a scintilla of evidence, and therefore insufficient to support the conclusion. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059; Galveston, H. & S. A. Ry. v. Faber, 77 Tex. 153, 8 S. W. 64; Garrett v. Hunt (Tex. Com. App.) 283 S. W. 489; Graham Natl. Bank v. Beavers (Tex. Com. App.) 290 S. W. 529; and other authorities cited above.

Nor was there any evidence offered to show that the failure of the Blanchard Manufacturing Company was brought about by incompetent management which would have been avoided if C. L. Pool had complied with his agreement to give his personal attention to the business. That fact was one of the necessary elements of the cause of action alleged against C. L. Pool, and the burden was upon plaintiff to introduce competent evidence sufficient, prima facie, to sustain those allegations in order to overcome C. L. Pool's plea of privilege.

 The right accorded to a citizen by article 1995 to be sued in the county of his residence is a valuable right and has been jealously guarded by the decisions of our state. In order to deprive him of that right and require him to incur the extra expense and inconvenience of defending the suit in some other county probably far distant from his home, it is incumbent upon plaintiff not only to show that his suit comes within some of the exceptions of that article, but also to make a prima facie showing that he is asserting a meritorious demand.

Hence, we conclude that the venue of the suit against C. L. Pool was improperly laid in Cooke county and therefore there was no basis for its maintenance against the Pool Manufacturing Company in that county under subdivision 29a of article 1995.

By reason of the foregoing conclusions, it becomes unnecessary to determine, and we do not determine, whether or not plaintiff's pleading and evidence offered in support thereof established a prima facie showing of the proper measure of damages recoverable, if right of recovery had been established; such a showing being a further necessary element of his cause of action.

For the reasons noted, the judgment of the trial court overruling the defendants' pleas of privilege is reversed and judgment is here rendered sustaining those pleas. The cause will be remanded to the trial court, with instructions to enter an order transferring the case to the district court of Grayson county in accordance with the provisions of the statutes in such cases made and provided.